UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LORI L. PULTS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 4:23 CV 463 RWS |
| CHRIS MCBEE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This case is before me on the petition of Lori L. Pults for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pults asserts eight grounds for relief in her petition. Because none of her grounds for relief have merit and/or are procedurally defaulted, I will deny Pults's petition.

## BACKGROUND

On April 21, 2017, a jury convicted Pults of first-degree murder and armed criminal action.  On June 26, 2017, the trial court sentenced her to life imprisonment without the possibility of parole, plus ten years.  Pults's conviction and sentence were affirmed on appeal.  On January 29, 2019, the Missouri Supreme Court denied Pults's motion for transfer.

On April 19, 2019, Pults filed a timely *pro se* motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.[1]  The motion court conducted an evidentiary hearing on June 21, 2021, and denied the amended post-conviction motion on September 21, 2021.

The Missouri Court of Appeals affirmed the denial of Rule 29.15 relief on December 20, 2022.  The mandate issued in the post-conviction appeal on March 7, 2023.  Pults then filed a timely petition for writ of habeas corpus on April 6, 2023.

The Missouri Court of Appeals described the factual and procedural background of this case as follows:

> In the late evening of May 3, 2015, Pults stabbed her boyfriend, Victim, twice in the chest while he was asleep in his recliner chair, causing his death. Later, Pults went to a neighbor's home and called 911. When police arrived, Pults repeatedly told one of the responding officers, "I killed him, I killed him."
>
> Pults was transported to the Sheriff's Office and escorted to an interrogation room. Pults made an unsolicited statement to Deputy Kevin Gugliano ("Deputy Gugliano") that "I just reacted. I didn't mean to. I just reacted. I'll tell the detective that, too." Deputy Gugliano told Pults a detective would be in shortly and then left Pults alone in the room. Shortly thereafter, Pults asked to use the restroom and said she was cold. Detective Erin Doherty ("Detective Doherty") took Pults to the restroom. Without prompting, Pults stated, "I still can't believe this is happening . . . He beat me up a week ago . . . . He's been beating me up." Detective Doherty took Pults back to the interrogation room, and told Pults she would be with her shortly.

---

[1] Pults filed a timely *pro se* motion, but her counsel filed an untimely amended motion. However, the motion court concluded that Pults was abandoned by counsel and accepted the amended motion as timely pursuant to *Sanders v. State*, 807 S.W.2d 493 (Mo. Banc 1991).  ECF No. 7-20, p. 5 n. 3.

A few minutes later, Deputy Gugliano came back into the room to give Pults a blanket. Again without prompting, Pults voluntarily stated: "I just can't understand that these hands—I remember, I remember holding the knife. I remember taking it from him. And I remember holding it, and then I just did it." Deputy Gugliano then left the room. While Pults sat alone, she yelled out in a loud voice:

> **PULTS:** Hey, I need to make a phone call. I need to make a phone call, please. Hello.
> [Door opens]
> **PULTS:** Hey, I need to make a phone call, please.
> **DEPUTY GUGLIANO:** Okay.
> **PULTS:** I—they're gonna take my money, and I need to get a hold of my lawyer.
> **DEPUTY GUGLIANO:** Okay. Hold on one sec, okay?

Deputy Gugliano closed the door. About twenty-five minutes later, Detective Doherty came back into the interrogation room and advised Pults of her *Miranda* rights. Pults indicated she understood her rights, then began discussing her involvement in Victim's death and admitted she stabbed Victim. Pults neither requested an attorney nor made any reference to contacting an attorney during the interview. The entirety of the events that transpired in the interrogation room were audio and video recorded.

The State charged Pults with one count of first-degree murder, in violation of Section 565.020 RSMo (2000), and an associated count of armed criminal action, in violation of Section 571.015. Prior to trial, Pults filed a motion to suppress statements made during the custodial interrogation. Pults argued she unequivocally invoked her right to counsel when she told Deputy Gugliano that she needed to "get a hold of my attorney," however, Pults was not given an opportunity to speak with counsel and was then interrogated by Detective Doherty. Pults asserted that continuing the interrogation after she clearly and unequivocally asked to contact her attorney was a violation of her constitutional rights.

The trial court heard arguments on Pults's motion to suppress, and the video recording from the interrogation room was offered and received into evidence. The trial court subsequently denied Pults's motion, concluding, in part:

3

Ms. Pults made one single statement wherein she mentioned talking to her lawyer. The statement was made in the same sentence where she wanted to make a call because "they're going to take my money.["] The Court finds the statement to be ambiguous in that it is not clear that the request to talk to her lawyer was related to the money issue or to the police interview. Ms. Pults never asked for an attorney after *Miranda* warnings were given. The Court finds that this statement regarding talking to her lawyer was not a clear and unambiguous statement that a reasonable officer in Deputy Gugliano's or Detective Doherty's position which would have caused either of them to believe Ms. Pults had invoked her right to counsel [sic].

Thereafter, Pults filed a second motion to suppress statements based on additional evidence. Pults contended that during discovery, she received a supplemental report prepared by Deputy Gugliano supporting her "position that her request to talk to her lawyer was sufficiently clear and was understood by Deputy Gugliano."

The trial court held another hearing on Pults's second motion to suppress where both Deputy Gugliano and Detective Doherty testified. Specifically, Deputy Gugliano testified Pults "asked if she could talk to somebody about getting some money and that she was cold and needed to use the bathroom, and then she said something along the lines of I think I need to talk to a lawyer." Based on these statement, Deputy Gugliano testified he did not clearly understand why Pults was asking for an attorney as she did not specifically state her reason. The trial court subsequently denied Pults's second motion to suppress, stating the additional evidence from the second hearing "does not change the court's prior ruling."

A jury trial was held. The State did not seek to admit the video recording of the police interview into evidence, however, Detective Doherty testified regarding Pults's statements during the interview as to how the stabbing occurred. Following trial, the jury convicted Pults of the charged crimes. Pults was sentenced to consecutive terms of life imprisonment without the possibility of parole for first-degree murder and ten years' imprisonment for armed criminal action.

ECF No. 7-13, pp. 2–5 (cleaned up).

In her petition for writ of habeas corpus, Pults raises eight grounds for relief:

(1) The trial court erred in denying petitioner's motion to suppress her interview with law enforcement in violation of the right to counsel;

(2) Trial counsel was ineffective for not better explaining the battered spouse self-defense instruction as opposed to the general self-defense instruction;

(3) Trial counsel was ineffective for not investigating a diminished capacity defense;

(4) Trial counsel was ineffective for not presenting a diminished capacity defense to the first-degree murder charge;

(5) Trial counsel was ineffective for not objecting to prior bad acts evidence;

(6) Trial counsel was ineffective for failing to investigate or call Haley Pults, Bryan Johnson, Cheryl Laredo, Matt Yeater, and/or Nancy Cordes as witnesses;

(7) Trial counsel was ineffective for failing to object to comments about statements by Petitioner's daughter who did not testify for the State and failing to request a limiting instruction; and

(8) Trial counsel was ineffective for not asking the jury to return not guilty verdicts on all counts.

Respondent asserts that grounds one through four should be denied on the merits, and that grounds five through eight are procedurally defaulted and/or without merit.

## LEGAL STANDARD

Federal courts are authorized to issue habeas relief for state prisoners pursuant to 28 U.S.C § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). But this power is limited to "only those applications alleging that a person is in state

custody 'in violation of the Constitution or laws or treaties of the United States.'"
*Id.* Notwithstanding narrow exceptions, federal courts may not grant such applications if the applicant has not exhausted state remedies. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

For claims adjudicated on the merits in state court proceedings, federal courts may issue habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

An adjudication is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). An adjudication is an "unreasonable application" of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* The standard requires an objectively unreasonable application of federal law; a merely incorrect application is not sufficient. *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). Thus, to obtain habeas relief from a federal court, the

6

petitioner must show that the challenged state court ruling "rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (cleaned up). This standard is difficult to meet. *Id.* at 357–58.

As with legal findings, "a determination of a factual issue by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[E]ven erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'" *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

## DISCUSSION

### Claims Adjudicated on the Merits: Grounds One, Two, Three, and Four

### A. Ground One: Denial of Petitioner's Motion to Suppress

In Ground One, Pults claims she was denied due process when the trial court denied her motion to suppress statements in violation of her Fifth Amendment right to counsel and privilege against self-incrimination. On direct appeal, the Missouri Court of Appeals denied this claim as follows:

> In this case, the issue is whether Pults's statement that "they're gonna take my money, and I need to get a hold of my lawyer" constitutes an unambiguous, unequivocal, and specific request for counsel in dealing with a custodial interrogation. *See Harris*, 305 S.W.3d 482, 485 (Mo. App. E.D. 2010). We find it does not. The record demonstrates that, prior to the interrogation, Pults willingly spoke with police, and made numerous, unsolicited statements

regarding Victim and admitted to killing Victim. About twenty-five or thirty minutes later, as she sat alone in the interrogation room, Pults initiated a request for a phone call and stated, "I—they're gonna take my money, and I need to get a hold of my lawyer." Pults contends her statement that "I need to get a hold of my lawyer" was a clear and unambiguous request for an attorney, and essentially asks this Court to read the statement in isolation. We decline to do so. Rather, this Court "must look to the full context of a particular statement in order to determine whether a suspect invoked [her] rights or not." *State v. O'Neal*, 392 S.W.3d 556, 569 (Mo. App. W.D. 2013); *see also State v. Clemons*, 946 S.W.2d 206, 219 (Mo. banc 1997) ("[W]e do not read *Miranda* searching for out-of-context sentences that support a preferred outcome."). While viewed in isolation, the statement on which Pults relies could be interpreted as an invocation of her right to counsel, however, that single remark is not the totality of what Pults said. Looking at the full context of the statement, it was directly preceded by her statement that "they're gonna take my money." Consequently, it is not sufficiently clear whether Pults's request to "get a hold" of her lawyer was in relation to her money or the impending interrogation.

Moreover, during the suppression hearing, Deputy Gugliano testified he did not clearly understand why Pults was asking for an attorney as she did not specifically state her reason. We note Detective Gugliano was under no obligation to ask clarifying questions to ascertain Pults's intent. *See Davis v. United States*, 512 U.S. 452, 461–62 (1994) ("[W]e are unwilling to create a third layer of prophylaxis to prevent police questioning when the suspect might want a lawyer."). To require the immediate cessation of questioning when it is reasonably unclear whether a suspect is invoking the right to counsel "would needlessly prevent the police from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present." *Id.* at 460. Based on the circumstances here, we agree with the trial court that a reasonable officer would not have understood Pults's statement to be an invocation of her Fifth Amendment right to counsel. *State v. Holman*, 502 S.W.3d 621, 625 (Mo. banc 2016); *Davis*, 512 U.S. at 459.

Additionally, after Detective Doherty read Pults her *Miranda* rights, Pults acknowledged she understood her rights. Pults then proceeded to voluntarily discuss her involvement in Victim's death and admitted to stabbing Victim. At no point during the interrogation did Pults request an attorney or make any reference to contacting an attorney. Pults also did not seek to terminate questioning by Detective Doherty. Because Pults did not clearly and

8

unambiguously invoke her right to counsel prior to or after being read her *Miranda* rights, but rather repeatedly indicated her willingness to speak to police, we find Detective Doherty's interrogation of Pults was proper. *See State v. Holman*, 502 S.W.3d 621, 625–26 (Mo. banc 2016) (holding interrogation was proper where Defendant stated he would not sign a consent to search form without his attorney, yet indicated his willingness to speak to police and did not invoke his right to counsel after being read his *Miranda* rights).

Pults relies on *State v. Harris* to support her claim that her statement was a clear and unambiguous request for counsel. However, we find the facts in *Harris* are distinguishable from those in the present case. In *Harris*, after the detective explained to the defendant that she had the right to contact a lawyer at any time during the interrogation, the defendant twice stated, "I'd rather appoint a lawyer." *Harris*, 305 S.W.3d at 486. The detective then asked the defendant, ". . . are you trying to get [a lawyer] appointed for you?" The defendant responded, "Yeah." *Id.* This Court found that at this point, the detective should have ceased questioning the defendant until she talked to a lawyer because she clearly and unequivocally invoked her right to counsel. *Id.* at 488. Rather, the detective continued to try to explain the defendant's *Miranda* rights to her, and, ultimately, got the defendant to agree to talk and sign a waiver form. *Id.* at 488-89. This Court concluded the defendant's Fifth Amendment rights were violated and any statements resulting from the detective's interrogation should have been suppressed. *Id.* at 490.

In this case, unlike *Harris*, it is unclear whether Pults's statement that she needed to "get a hold" of her lawyer was in connection with the custodial interrogation. While the defendant in *Harris* repeatedly made clear and unequivocal requests for counsel while being Mirandized, here, Pults's statement was unsolicited, and made prior to any custodial interrogation and reading of her *Miranda* rights. Moreover, as stated *supra*, given the full context of Pults's statement, it is unclear whether her request for counsel was in relation to the money issue or the impending custodial interrogation. Based on this record, we cannot say Pults clearly and unambiguously indicated her "desire for the assistance of counsel in [her] dealings with the police." *See id.* at 485; *McNeil v. Wisconsin*, 510 U.S. 171, 178 (1991).

Accordingly, the trial court did not err in denying Pults's motion to suppress because Pults failed to make an unambiguous, unequivocal, and specific

request for counsel, and, therefore, her Fifth Amendment rights were not violated. Point denied.

ECF No. 7-13, pp. 7–10 (cleaned up).

Pults does not provide any factual grounds or analysis to overcome the previous decisions of the state courts.  The state court's legal findings are not "so lacking in justification" that there is reason to set aside these determinations and subject the prior decision to review by this Court.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  Moreover, Pults does not provide any evidence that the state courts' decisions were contrary to, or involved an unreasonable application of, clearly established federal law.  Nor did Pults establish that the state courts' decisions were based on unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Ground One of Pults's habeas petition will be denied.

### B. Ground Two: Ineffective assistance of counsel for not better explaining the battered spouse self-defense instruction as opposed to the general self-defense instruction

In Ground Two, Pults claims she was denied effective assistance of counsel because trial counsel did not sufficiently explain the differences between the battered spouse self-defense instruction and the general self-defense instruction. The Missouri Court of Appeals rejected this claim on appeal of the denial of post-conviction relief as follows:

Trial Counsel argued a battered spouse syndrome defense at trial and subsequently offered the applicable instruction, MAI-CR 306.07. In Point II, Movant claims Trial Counsel was ineffective for failing to request a jury

10

instruction for general self-defense under MAI-CR 3d 306.06, instead of MAI-CR 3d 306.07 which is a similar self-defense instruction but tailored by battered spouse syndrome language. Trial Counsel was not ineffective for failing to submit the general self-defense instruction for two main reasons.

First, submission of the general self-defense instruction would have been meaningless because Trial Counsel submitted MAI-CR 3d 306.07, an instruction covering all of the elements of self-defense contained in MAI-CR 3d 306.06. "[T]rial counsel is not ineffective for failing to do a meaningless act." *Giammanco v. State*, 416 S.W.3d 833, 841 (Mo. App. E.D. 2013) (quoting *Harp v. State*, 209 S.W.3d 560, 564 (Mo. App. S.D. 2007)). As the motion court correctly emphasized, the Notes on Use for MAI-CR 3d 306.07 state that this instruction should be used "in lieu of" MAI-CR 3d 306.06, the general self-defense instruction. MAI-CR 3d 306.07, n. 1. The submitted instruction does not create a separate defense from general self-defense, but merely supplements the general self-defense instruction with language about battered spouse syndrome. Evidence of battered spouse syndrome is admissible in Missouri on the issue of self-defense. *State v. Pisciotta*, 968 S.W.2d 185, 189 (Mo. App. W.D. 1998). Also, evidence of the syndrome is offered to show a battered spouse's state of mind at the time of the offense in order to assist the jury in evaluating the claim of self-defense. *Id.*

A jury is still required to find all of the elements of self-defense, as specified in both the submitted instruction and the general self-defense instruction. While evidence of the battered spouse syndrome is not in and of itself a defense to a murder charge, its function is to aid the jury in determining whether a defendant's fear and claim of self-defense are reasonable. *State v. Edwards*, 60 S.W.3d 602, 613 (Mo. App. W.D. 2001). Pursuant to § 563.033 RSMo, a defendant may use evidence of battered spouse syndrome to support the third element of self-defense, a reasonable belief that deadly force was required to protect the defendant from serious harm at the hands of the victim. *Francis v. State*, 183 S.W.3d 288, 299 (Mo. App. W.D. 2005). Trial Counsel reasonably submitted the self-defense instruction under MAI-CR 3d 306.07 rather than the general self-defense instruction in MAI-CR 3d 306.06 because he concluded, after retaining a mental health expert, Movant suffered from battered spouse syndrome. As he stated during the evidentiary hearing, he had doubts as to whether the general self-defense instruction would succeed, so he submitted a self-defense instruction tailored with battered spouse syndrome language to assist the jury with understanding her mental state at the time of the stabbing.

11

Second, Trial Counsel made a strategic decision to submit an instruction other than the general self-defense instruction. More specifically, he concluded that two theories of self-defense would confuse the jury so he had serious doubts that a general self-defense instruction would succeed. This is a reasonable conclusion considering the submitted instruction and the general self-defense instruction share the same elements. As stated above, the submitted instruction compliments the self-defense instruction with added language about battered spouse syndrome, assisting the jury to understand Movant's mental state at the time of the stabbing. "An objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel." *Jones*, 514 S.W.3d at 81 (quoting *Oplinger v. State*, 350 S.W.3d 474, 477 (Mo. App. S.D. 2011)).

Trial Counsel doubted that a general self-defense instruction would succeed because the State had "substantial evidence" that Movant acted deliberately when she stabbed Victim. Self-defense "requires a real, specific, actual and immediate threat of bodily violence to which the defendant's actions are an appropriate and proportional response." *State v. Harris*, 870 S.W.2d 798, 809-10 (Mo. banc 1994). The State's evidence reflected that Movant stabbed Victim while he slept in his reclining chair, indicating that Victim did not pose an imminent threat to Movant at the time of the murder. Movant also admitted during her interview with Detective Doherty that she went down the hall and took a few minutes to decide whether or not to kill Victim, stating that she "was going to murder him where he was." Trial Counsel reasonably concluded that the State's evidence reflected deliberation, which did not support a claim of general self-defense.

In sum, Trial Counsel was not ineffective for failing to present a general self-defense instruction because the Notes on Use state MAI-CR 306.07 should be used "in lieu of" MAI-CR 306.06, the general self-defense instruction would have a low chance of success considering the State's evidence about deliberation and the general self-defense instruction would perhaps confuse the jury when paired with the submitted instruction. Point II denied.

ECF No. 7-20, pp. 8–10.

Pults's ineffective assistance of trial counsel claims are governed by

*Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong

test to determine when counsel's ineffective performance violates the Sixth Amendment.   First, the petitioner "must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687.  Second, the petitioner must "show that the deficient performance prejudiced the defense." *Id.*  To demonstrate prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In applying *Strickland's* two prongs, the Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.* at 689, and that reviewing courts should indulge a strong presumption that counsel's actions fell within the "wide range of professionally competent assistance." *Id.* at 690. "Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).  This means that Pults must do more than "show that she would have satisfied *Strickland's* test if her claim were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002) (cleaned up).  "Rather, she must show that the [Missouri Court of Appeals] applied *Strickland*

13

to the facts of her case in an objectively unreasonable manner." *Id.* at 699 (cleaned up).

"Under *Strickland*, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Hinton v. Alabama*, 571 U.S. 263, 274 (2014) (quoting *Strickland*, 466 U.S. at 690–91). "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* (quoting *Strickland*, 466 U.S. at 691).

Here, the Missouri Court of Appeals reasonably concluded that counsel's performance was not constitutionally deficient because (a) submitting the general self-defense instruction would have been a meaningless act and (b) counsel made a strategic decision not to submit the general self-defense instruction based on the State's evidence of deliberation and the potential to confuse the jury. *See* ECF No. 7-15, pp. 37–40, 49–50. Because Pults fails to show her counsel's representation was deficient under the first prong of *Strickland*, I need not address whether she was prejudiced. Ground Two of Pults's habeas petition will be denied.

## C. Ground Three: Ineffective assistance of counsel for not investigating a diminished capacity defense

In Ground Three, Pults claims she was denied effective assistance of counsel because trial counsel did not investigate a diminished capacity defense. The Missouri Court of Appeals rejected this claim on appeal of the denial of post-conviction relief as follows:

> [W]e find that Trial Counsel did not unreasonably fail to investigate diminished capacity.
>
> First, Trial Counsel did not have the qualifications to observe whether Movant suffered from diminished capacity and the initial, qualified expert retained to assist with the defense did not conclude Movant suffered from diminished capacity. While Trial Counsel hired Dr. Fischer to investigate a theory of battered spouse syndrome, Dr. Fischer had the expertise to determine whether or not Movant acted with a diminished capacity. Although she was qualified to identify diminished capacity, Dr. Fischer did not do so after conducting a comprehensive psychological examination of Movant. Trial Counsel reasonably relied on her conclusions, which did not reflect Movant suffered from diminished capacity. *See Davis v. State*, 486 S.W.3d 898, 912 (Mo. banc 2016) (finding trial counsel's decision not to present a diminished capacity defense reasonable trial strategy where trial counsel based his decision on the conclusions of two experts who did not conclude appellant suffered from diminished capacity); *see also Smith v. State*, 784 S.W.2d 855, 858 (Mo. App. E.D. 1990) (concluding trial counsel was not ineffective for failing to inform appellant of the diminished capacity defense where psychiatric examinations of appellant did not provide evidence of diminished capacity).
>
> Dr. Daniel concluding much later that Movant suffered from diminished capacity does not demonstrate that Trial Counsel was ineffective. During the evidentiary hearing, Dr. Daniel admitted he relied on records, including Department of Corrections records, which were inaccessible to Dr. Fischer. Despite differing on diminished capacity, Dr. Fischer and Dr. Daniel made similar conclusions about Movant suffering from post-traumatic stress disorder and battered spouse syndrome. Trial counsel took reasonable steps to investigate potential mental defenses by hiring Dr. Fischer. "Where trial

15

counsel has, as here, made reasonable efforts to investigate the mental status of defendant and has concluded that there is no basis in pursuing the defense, counsel should not be held ineffective for not shopping for a psychiatrist who would testify in a particular way." *State v. Mease*, 842 S.W.2d 98, 114 (Mo. banc 1992).

Second, Trial Counsel made a strategic decision not to investigate a diminished capacity defense because he developed an all-or-nothing strategy utilizing battered spouse syndrome which was more conducive to achieving an acquittal. During the evidentiary hearing, Trial Counsel explained that a diminished capacity defense would probably result in a murder second degree conviction whereas a jury was more likely to consider an acquittal after listening to evidence relating to battered spouse syndrome. According to him, the outcome of diminished capacity "would have been murder in the second degree," but with battered spouse syndrome, "the outcome that we were going for was a not guilty." The decision to pursue an "all-or- nothing" defense has been consistently upheld as reasonable trial strategy. *Jones v. State*, 514 S.W.3d 72, 81 (Mo. App. E.D. 2017). Presenting a diminished capacity defense could have undermined Trial Counsel's all-or-nothing acquittal strategy. If the jury concluded that Movant suffered from diminished capacity, the likely outcome was a murder second degree conviction instead of acquitting her based on self-defense. Trial Counsel acted reasonably when pursuing an all or nothing strategy through a battered spouse syndrome defense as opposed to pursuing a diminished capacity defense which invited a possible conviction for a lesser-included, class A felony offense. Point I denied.

ECF No. 7-20, pp. 10–13.

As with Ground Two, Ground Three of Pults's habeas petition is governed by *Strickland*. "Under *Strickland*, 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Hinton*, 571 U.S. at 274 (quoting *Strickland*, 466 U.S. at 690–91).

"In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* (quoting *Strickland*, 466 U.S. at 691).

Here, the Missouri Court of Appeals reasonably concluded that counsel's performance was not constitutionally deficient because (a) he reasonably relied on a qualified expert's conclusion that Pults did not suffer from diminished capacity and (b) he made a strategic decision to pursue an all-or-nothing acquittal strategy. *See* ECF No. 7-15, pp. 41–43, 47–48. Because Pults fails to show her counsel's representation was deficient under the first prong of *Strickland*, I need not address whether she was prejudiced. Ground Three of Pults's habeas petition will be denied.

### D. Ground Four: Ineffective assistance of counsel for not presenting a diminished capacity defense to the first-degree murder charge

In Ground Four, Pults claims she was denied effective assistance of counsel because trial counsel did not present a diminished capacity defense to the first-degree murder charge. The Missouri Court of Appeals found that counsel concluded there was no basis for pursuing a diminished capacity defense after making reasonable efforts to investigate Pults's mental status, and that counsel chose not to pursue a diminished capacity defense as part of an all-or-nothing acquittal strategy. ECF No. 7-20, pp. 8–10. The decision of the Missouri Court of Appeals denying Pults post-conviction relief on this ground is consistent with a reasonable application of *Strickland*. Because Pults fails to show her counsel's representation was deficient

under the first prong of *Strickland*, I need not address whether she was prejudiced. Ground Four of Pults's habeas petition will be denied.

<u>Procedurally Defaulted Claims: Grounds Five, Six, Seven, and Eight</u>

If a prisoner has gone through all stages of direct appeal and post-conviction proceedings without presenting a claim to the state courts, that claim is procedurally defaulted. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997); *see also Shinn v. Ramirez*, 142 S.Ct 1718, 1731 (2022). Federal courts may not reach the merits of procedurally defaulted claims unless the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (cleaned up).

To demonstrate cause, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). But "the failure to preserve claims on appeal from a postconviction proceeding can[not] constitute cause." *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012).

To demonstrate prejudice, the petitioner must show that the claimed constitutional violation "worked to his actual and substantial disadvantage." *Murray*, 477 U.S. at 494. A showing that the errors at trial created a "possibility of prejudice" is not sufficient. *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170

18

(1982)).  "If a prisoner fails to demonstrate cause, the court need not address prejudice." *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007).

### E. Ground Five: Ineffective assistance of counsel for not objecting to prior bad acts evidence

In Ground Five, Pults claims she was denied effective assistance of counsel because trial counsel did not object to prior bad acts evidence.  This claim is procedurally defaulted because Pults did not raise it in the appeal of the denial of her post-conviction relief motion.  ECF No. 7-18.  This claim also does not fall within the equitable rule announced in *Martinez v. Ryan*, 566 U.S. 1 (2012) because it procedurally defaulted on Pults's appeal of the denial of her motion for post-conviction relief, not the initial review of her motion for post-conviction relief.  *See Franklin v. Hawley*, 879 F.3d 307, 313 (8th Cir. 2018).

Regardless of procedural default, the claim is also meritless under *Strickland* because an attorney's performance "is not deficient for failure to object to admissible evidence." *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (quoting *Russell v. Jones*, 886 F.3d 149, 152 (8th Cir. 1989)).  Here, the state court determined the prior bad acts evidence to be admissible, and the post-conviction review motion court found "no showing that those issues were improper, the objections would have been sustained, or that objecting and having the evidence excluded would have resulted in a different outcome."  ECF 7-17, p. 10.  Given the state court's reasonable determination that the evidence was not improper, Pults cannot overcome the strong

presumption that counsel acted reasonably in failing to object, especially under the doubly deferential standard of the AEDPA.  Ground Five of Pults's habeas petition will be denied.

### F. Ground Six: Ineffective assistance of counsel for failing to call certain witnesses

In Ground Six, Pults claims she was denied effective assistance of counsel because trial counsel did not call Haley Pults, Bryan Johnson, Cheryl Laredo, Matt Yeater and/or Nancy Cordes as witnesses.  This claim is procedurally defaulted because Pults did not raise it in the appeal of the denial of her post-conviction relief motion.  ECF No. 7-18.  This claim also does not fall within the equitable rule announced in *Martinez* because it procedurally defaulted on Pults's appeal of the denial of her motion for post-conviction relief, not the initial review of her motion for post-conviction relief.  *See Franklin*, 879 F.3d at 313.

The claim is also meritless under *Strickland* because "the selection of witnesses . . . are questions of trial strategy and virtually unchallengeable." *State v. Kenley*, 952 S.W.2d 250, 266 (1997).  Here, the post-conviction motion review court found that the uncalled witnesses were character witnesses who would not have "provide[d] a defense or negate[d] an element of the charges." ECF No. 7-17, p. 11.  As such, Pults "failed to show how any of the alleged failures of trial counsel changed the outcome of the trial." *Id.*  Given this determination, Pults cannot overcome the strong presumption that counsel acted reasonably in failing to call

those witnesses, especially under the doubly deferential standard of the AEDPA. Ground Six of Pults's habeas petition will be denied.

### G. Ground Seven: Ineffective assistance of counsel for failing to object to comments about statements by Petitioner's daughter who did not testify for the State and failing to request a limiting instruction

In Ground Seven, Pults claims she was denied effective assistance of counsel because trial counsel did not object to comments about statements by Petitioner's daughter who did not testify for the State and failed to request a limiting instruction. This claim is procedurally defaulted because Pults did not present it to the trial court in her motion for post-conviction relief.  ECF No. 7-17, 7-20.  But because this claim involves alleged ineffectiveness of Pults's trial counsel that was not presented by her post-conviction relief counsel in the initial review of her motion for post-conviction relief, I will consider whether I may nevertheless review the merits of the claim under the equitable rule announced in *Martinez*.  That rule provides that the procedural default of an ineffective assistance of trial counsel claim does not bar a federal habeas court from reviewing the merits of the claim if the claim has some merit and the petitioner's counsel in the initial-review collateral proceeding was ineffective.  *Martinez*, 566 U.S. at 14.

Pults's seventh claim does not fall within the *Martinez* rule because it lacks merit.  Although Pults's daughter did testify in the post-conviction review evidentiary hearing in support of Ground Six, she does not specifically identify

which comments at trial she alleges her counsel should have objected to.  Nor is it apparent from the record.  Therefore, Pults cannot show that she was prejudiced by counsel's failure to object.  Ground Seven of Pults's habeas petition will be denied.

### H. Ground Eight: Ineffective assistance of counsel for not asking the jury to return not guilty verdicts on all counts

In Ground Eight, Pults claims she was denied effective assistance of counsel because trial counsel did not ask the jury to return not guilty verdicts on all counts. This claim is procedurally defaulted because Pults did not raise it in the appeal of the denial of her post-conviction relief motion.  ECF No. 7-18.  This claim also does not fall within the equitable rule announced in *Martinez* because it procedurally defaulted on Pults's appeal of the denial of her motion for post-conviction relief, not the initial review of his motion for post-conviction relief.  *See Franklin*, 879 F.3d at 313.

The claim is also meritless.  The post-conviction motion review court found "no indication or showing that [trial counsel] not specifically asking the jury to reach a verdict of not guilty was the reason that the jury found [Pults] guilty."  ECF No. 7-17, p. 10.  It further found that counsel's trial strategy "clearly show[ed] that he was indicating to the jury that they should find Ms. Pults to be not guilty of all offenses based upon self-defense under the battered spouse self-defense instruction.  *Id.* Given the state court's reasonable determination that the counsel's failure to ask the jury for not guilty verdicts on all counts did not change the outcome of the trial, Pults

cannot overcome the strong presumption that counsel acted reasonably in failing to object, especially under the doubly deferential standard of the AEDPA.  Ground Eight of Pults's habeas petition will be denied.

**CONCLUSION**

Because Pults's claims are procedurally defaulted and/or without merit.  I will also decline to issue a certificate of appealability because Pults has not made a substantial showing of the denial of a federal constitutional right.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Lori L. Pults for a writ of habeas corpus [1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability under 28 U.S.C. § 2253.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE


Dated this 8th day of September 2023.